Thank you. Good morning and welcome to the Ninth Circuit. Thank you for appearing today. We just have one case on calendar which is Ducilus v. Bondi 24-1451. Each side will have 10 minutes and we look forward to your arguments. Oh sorry, I should also say that Judge Bress and I are pleased to be sitting with Judge Boggs who's sitting by designation from the Sixth Circuit. I apologize for not saying that. We are very grateful for his help and welcome him and with that, I think we're ready to begin. I apologize. Did I go forward, Your Honor? Yes, please. Sorry for the interruption. Good morning. In this court, I'm Murray Hills, Petitioner for the Attorney for Petitioner. Agency basically held that extortion and poor prison conditions do not rise to the level of it tends to cause suffering. Now, the B.I. dramatically, substantially led and J.E. and there's reasons for that because it's regarding deportees being incarcerated once they came back to Haiti, so it's related to their country. However, it's distinguishable. 2002, Haiti was just a poor country that didn't have the resources to properly run the prisons. At this point, the Haiti government is completely collapsed. It also should be noted at one point, the Haitian government suspended the process of detaining deportees once they came into Haiti, so at that point, then when they started doing that again, that's intentional act. It also should be noted, I did look up. What do you mean? Intense to detain? Well, they suspended it one time. Yes, it is to detain. At one point, they suspended it and then started redoing again, so that's an intentional act. Go ahead, Judge Boggs. As I understand it, you began by saying, well, there's extortion and there's poor conditions, but don't you need to show more likely than not, not just that some people are detained for extortion purposes, but this gentleman, it's more likely than not, 50% plus that he will be detained, and then beyond that, it's 50% more likely than not that he will be tortured, that you have to be both of those, not just that it could happen. Well, that's fair. That's a fair look at it, but there was an article that said that of the 27 people that were deported, all 27 were detained, so that's actually occurring. Some of the articles, all of which to be fair, or at least to me, are not like State Department country conditions we usually see. They're from relatively advocacy organizations or partisan magazines and that sort of thing. I did not see the numbers about 27. You may be right. The ones I saw, the guy says, I'm in here, and there are 20 or 30 other American deportees, but it doesn't say how many people total are deported. I think it's October 10th submission, and he said there's 27 out of 27. I mean, the submission is what, another newspaper article? I think something to that effect, but also, the government did not object to that, so they could have objected and they did not. I'm not saying that it's objectionable. It is evidence, but whether it would, A, rise to 50 percent and, B, compel that conclusion, I mean, isn't that the more difficult part? I think, well, it says 27 out of 27. That's pretty good. It's been, the country conditions show, and I think it was on October 10th that we submitted that, but the country conditions show they've been doing this for a long time. Then they suspended it, and then they started doing it again, so that is an intentional act. The question is then, when you get actually into the jails, the conditions are clearly terrible. They're deplorable, so you're basically in a position, either you have to pay for this to get out, or you're in incredibly difficult conditions. And there's also some showing that in 2002, only 10 detained people were killed versus there was like 200 last year, so the conditions are getting worse. If we're looking at the country conditions, Haiti is just the government's collapse. 1.1 million people are under the control of gangs. So, I mean, I think you have the act that they're actually redoing this again, and then you have the act if they can't get out, the conditions are deplorable. Is there a law on the difference that if you're simply unable to intervene in things that are not under your control, that that would count as acquiescence or knowing acquiescence? Well, I think they're giving a blind eye to it. None of these people are being held with charges, and they're basically in a position where they can't get out. And I want to also make another point. Can I ask a question? You're saying the government has collapsed, but I'm not sure how that helps you for CAT, where we need acquiescence. What do we do if you're saying the government has collapsed, but the CAT claim requires essentially there to be a government? Well, I mean, collapse completely is not correct. They're obviously at a detention facility, which is run by the government, and they're having a blind eye. They basically know that they've come in here and they came into the prison. They have no charges. There's no due process. Back in 2002, there was due process where they basically said they had some sort of commission that they'd look at cases. They said it was a little sporadic, but they said it would be a couple of weeks. There's no suggestion that exists anymore. So I think the fact that they're in the jail and they're under control of the for them conditions get that well. And I thought part of your argument was that the government was actually using the bad conditions as a way to conduct extortion, getting the families to pay to get them out. That seems to imply a level of government involvement. Is it your argument that that's still continuing? Yes. And yes. And I don't think that in the 2002, another decision, I didn't see anything that they were doing that before. So definitely extortion is another act of the by the government. They're basically looking at these people's as income. So, and it's just recently they started redoing it again. So it's definitely, there was an intent to do it because they changed their policy and then they're extorting, which was something new. Do you have any information about how common the extortion is? I don't. I just, the article suggests that that's a modus operandi. I don't really have statistics that say one thing versus the other, but it's been pretty consistent in the articles. So what articles are you referring to specifically that you would assume? I had that. I apologize. I think it's a submission to October 10th. But October 10th, you're saying is the date of the submission. Yes. And as I remember, the mission was quite voluminous. Given some of the citations, I looked, as I said, I found one in the nation that then is recapped in the North Jersey. And then there's the two that come from the Health Without Walls. There are two of them that you cite that take off from each other. Are those the ones you're referring to? I think so. I apologize. I think it's the submission of October 10th and it would be under section. I'm not sure what you mean by a submission of October 10th. Do you mean to us? No, to the court. I apologize. October 10th. I apologize. What was the administrative record? I think it's 14, I believe. Sorry, what are you saying? I think it was example 14. I could direct that in a brief statement. But it's basically the pipeline funneling US deportees to Asian prison. That's the Nation Magazine article. It starts at page 357 of 594, according to my reading of the top of the docket entry 7.2. Is that headline is the Nation Magazine article of 2022, November of 2022? Yes, that's correct. Okay. That's the one. Good. So I would believe that we have more than 50% chance that they're going to be detained because of parolees. And more than 50% chance they're going to have torture through the conditions in the... Torture also would need to have specific intent to torture these people, not just that the conditions are so bad as to amount to torture. Is that correct? Well, they suspended it. And so they redid it again. They added the intent to redo the whole system. So I believe there's intent. They know what the condition is. The intent has to be for specific people, not just for bad conditions. Well, I mean, they know if there's someplace, one said 27 out of 27 of the deportees were going, were detained. So they know where these got, they put 100% at that point and they have some knowledge of what's going to happen. Let's hear from the government and we'll still give you two minutes for rebuttal. Good morning. May it please the court. My name is Kristen Whittaker and I'm here on behalf of the Attorney General of the United States. This court should deny the petition for review. Substantial evidence supports the agency's denial of the petitioner's application for cap deferral. Record evidence supports the immigration judge's determination that Doucelis failed to establish a likelihood that he would be subjected to torture in Haiti. And Doucelis does not identify any evidence that compels the contrary conclusion. Now, Doucelis presented two claims for cap deferral or two sources of a risk of torture, one from government officials in detention and one from Haitian gangs. So going to detention, what we were talking about previously, I think it's important to note that Doucelis does not identify evidence that compels the conclusion that he would be subjected to detention. The articles that he's pointing to, say the 27 out of 27, the practice itself was, as it was a practice in the past, like in matter of JE, when they refer to the U.S. State Department letter, where it was automatic that someone would be detained upon entering. However, the practice stopped in about 2012 to 2013. And then those articles say that the practice may have resumed if there were reports that it resumed. But it didn't compel that conclusion. The evidence itself is equivocal. And it seems as if the times are in flux, that there is no certainty that he would have been detained. So could I ask you, I'm struggling with whether the BIA actually gave the reasons that you're giving. So it's possible that this record doesn't have enough information about the frequency of these events for a cat claim to succeed. But I didn't understand that to be the basis of the BIA's denial here. Can you correct me if I'm wrong? So I think it's important to note that the board adopts the immigration judge's decision. And the immigration judge specifically says, and I think it's near the end of the detention analysis, but she says, you don't establish that you would be detained. So that's the weakest step in that chain. But isn't that because the IJ, maybe I'm wrong, but I thought the IJ had the misunderstanding that the policy of detaining returning convicts had ceased, but our record shows that that's not true. So wasn't there a mistake there? I don't think there was a mistake there. So it said that the process, there were reports, and I don't mean to use quotation marks, but the report that there may be more people being detained, that it may be widespread. But as Judge Boggs noted, these are articles from advocates. We don't have anything, say, from the US State Department indicating that there is a clear indication that a criminal deportee would be detained. So that was one issue. But even if we have the knowledge that he would be detained, he still failed to meet his burden of because if he's detained, he didn't show that he would be subjected to torture. And so that analysis also includes multiple parts. First, he didn't show that the government officials had specific intent to torture him. And I think that's one thing that wasn't really discussed when the petitioner was just now arguing before you, or petitioner's counsel. It's important that the government officials only have specific intent when they intend for the consequences of their act. So it's not just merely the fact that they place them in detention and they're subjected to poor prison conditions, because that could be from overcrowding, a lack of resources, poverty, et cetera. But you have to have the officials detaining them and then knowing and creating and maintaining those conditions to, in fact, torture them. And why isn't the extortion allegation and evidence in the record the link that provides what you were just talking about? So I want to go to the extortion article that the petitioner was referring to. That's exhibit C, and I believe the page number. We can talk about whether the extortion is enough, but if someone is put in prison in bad conditions that amount to torture in order to get money from their family, isn't that the intentional? Maybe you're about to say something about how frequent it is, but as a conceptual matter, that would be enough intent, wouldn't it? Potentially, you could have a situation in which if they are placing them somewhere and they're creating these circumstances and they have that bad intent, that could potentially be a circumstance, but that's not what we have here. So first off, the board says, we're looking at your argument regarding extortion. And the article that he refers to, it talks about a couple of detainees who were charged various amounts for paperwork, for transferring, and they were also asked for money for release. Nowhere does it show that this is extortion that's common, that's definitely going to happen. But the board said, nonetheless, even if we assume that extortion is going to happen, you still don't meet your burden of proof. First, extortion doesn't rise to the level because severe suffering and pain. Also, you don't show a likelihood. So say if there are a couple of bad actors, like I think this was- Sorry, you're making an argument that might be right, but can you point me to where the BIA, it sounds like you're saying the BIA said this, can you point me to where that was? Sure. So if you look at page four, okay, so they talk about the extortion. And it says, the respondent, petitioner points to an article from a record of a local American newspaper, and it talks about the article itself. Even assuming arguendo, however, that extortion as described does occur, he still has not met his burden. First, he has not shown the mistreatment he fears, including extortion in constitutes harm rising to the level of torture. In addition, he has not shown that the officials have the requisite specific intent, or that it is more likely than not that he is singled out for torture upon return to Haiti. And again, we have to remember that the board adopted the immigration judge's decision as well. So it fully addressed the extortion claim. And I think it's also important to note- Sorry, can you slow down, slow down. Tell me what, okay. So I thought you conceded a moment ago that extortion would be the right kind of intent. And are you contesting that the prison conditions amount to torture? I guess you read this, but I don't understand. I'm not sure this is right. So tell me, just go a little slower and explain where you think the CAT claim fails. Okay, sure. Let's take a step back first. So we don't have the evidence that the petitioner is asserting, the evidence that we have officials who are creating those poor prison conditions with the intent to extort. We don't have that. Remember, like party presentation- All right, so you think that that is needed. You couldn't just have, well, I mean, the state runs the prison. And are you that the conditions do not rise to the level of torture where people are getting cholera and don't have food and that these conditions are not sufficiently serious? Is that part of your argument? No. So I'm just going back to the original extortion claim. So the petitioner is trying to say that the officials are extorting people. They're creating these horrible conditions in order to extort. So I understood it to be more, they are putting people in these conditions on purpose for the creation of extortion. Not necessarily that they created the bad conditions specifically for extortion, but they're taking advantage of the bad conditions for extortion. Okay. So that could potentially be a plausible view, but there is no evidence here that compels that conclusion. One article that refers to extortion, there's nothing like that. Even the advocate says, I liken it to extortion. Okay, but what the BIA said is it doesn't rise to the level of torture, which that's the first sentence. It doesn't sound like you're relying on that, right? You're admitting that's wrong, I think. Well, so extortion itself does not necessarily rise to the level, but if we have acts that do rise to the level, you still fail because they don't have the specific intent to torture. So you can have instances where you have bad acts, right? Okay. So if you put someone in those conditions that you just said do rise to the level of torture, you put someone in them on purpose to get money from their family until you let them out, does that have intent to torture them in the meantime? If I intend to extort, and I'm aware that there's a potential consequence of these bad conditions, specific intent is very, very narrow. You have to maintain and create those conditions. It can't be pure reckless or negligence. It has to be that you are intending for that to occur. So simply because I placed you in prison and there is a possibility that you could get cholera or that you die of malnutrition, I did not have the specific intent for that to occur. I could have the specific intent to extort from you, but I do not intend for that torture to occur. Go ahead, Judge Boggs. Is there any indication that these American returnees are treated any worse than anyone else in the Haitian prisons? No, there is no evidence of that. And this also goes to the likelihood. So the immigration judge, again, had multiple steps. We don't have specific intent. We also don't have likelihood. Everyone is suffering from these conditions where they could be from poverty, the earthquake, overcrowding, the president's assassination, multiple factors. And they haven't shown that the criminal deportees are being subjected to any particular risk of torture or likelihood of torture. If they're being put... Okay, so the first step is they're detained when they return, if they have criminal records. If they are put into these terrible condition prisons with the idea that by putting them there, the conditions will be so terrible that the family is going to try to get them out because they know they're essentially being tortured, you're still saying that's not enough intent? I'm not saying exactly. In that hypothetical, potentially, but that's not what happened here. We don't have that evidence that compels that conclusion. We don't even have that evidence. I think it's possible that we don't know how frequent this is, but I am having trouble understanding whether we need to remand this for the agency to consider this argument because it seems like the steps of logic of why this would be a cat claim, I'm really struggling with just seeing anywhere where they fail, other than maybe that this doesn't happen frequently enough. But I don't see anything in the BIA's opinion that says that that's the problem. It says a lot. You're talking just in regards to the extortion, so say if the motive- The theory would be criminal detainees are all, sorry, criminal returnees are all detained. They are put in these prisons that have torturous conditions for the purpose of extortion. That all seems to mean that the specific people with the criminal records are going to be tortured intentionally. Now, maybe your argument is that doesn't happen frequently enough, but the BIA instead seems to say there's not enough intent and it doesn't rise the level of torture, but those things seem wrong. You may be right that the record doesn't compel that he's right, but I don't know that we can affirm the agency on the grounds that we're given here. I think that we have to tread carefully, because I think that it's important to rely on the party presentation doctrine, and that's not really the claim that was presented before us with the evidence that was before us. The article regarding extortion is very vague. It doesn't necessarily show that extortion, in effect, occurs. The board specifically says that, saying even assuming you still fail to meet your burden, because one, extortion does not rise to the level of torture. Even if that's a bad act, if you have that, it doesn't rise to the level of torture. Two, okay, if you have something that does rise to the level of torture, you don't show that the government itself has a specific intent to torture you. And then three, you haven't shown that you would be subjected to, or you have a likelihood of torture. So even if there are bad acts that are occurring, even if there are instances of torture, bad things, again, like I think what's a good example are the psychiatric facilities in Mexico, looking at those. Bad things can happen there, but the petitioner didn't meet their burden of proof because they didn't show the likelihood. But I think in the case you're referring to, well, okay, if it's likelihood, I just still don't see where that is really what the agency is saying. It seems like the agency is saying it doesn't rise to the level of torture, which I think you keep going back and forth, but at some moments of this argument, you've said these conditions are bad enough for torture. And you've also said, I think at some moments at least, that putting them there on purpose to get money would be an intent, an intentional use of the conditions as torture. And then there's a question whether you're singled out, but I think you're singled out because you're a criminal, someone with a criminal record who goes through this process, right? So I'm still not understanding. It's possible the agency on remand, if we send it back, could say, look, there's just not enough people having this happen to them. But. The BIA does say later that there's not a wide, he hasn't shown a widespread infliction of harm in Haitian prisons rising to the level of torture. So I had sort of understood that line to be making some of the points we're talking about, but it comes later in the discussion. There's also page 54 of the immigration judge's decision, page 12 of the immigration judges, the respondent failed to present evidence indicating a likelihood of suffering forms of abuse that would rise to the level of constituting torture in their severity. Again, it's in there, it's not perfect, but if the path is discernible, reasonably discernible, mean die, we should be able to know that the agency considered all the evidence and found the petitioner failed to meet his burden of proof. And the board specifically acknowledged his extortion arguments that remain the same. And it's just not supported by the record. Or I'm way over my time, so it's all right, I'll go ahead and conclude, unless you would like to ask further questions. It looks like we may have asked all our questions, so go ahead and conclude, please. All right, thank you. In conclusion, please deny the petition for review. Basically, none of the documents were objected to. Clearly, when there's extortion, there's intent, they know what's going to happen if they don't pay. The conditions in the jails are deplorable, I mean, call it death. So we believe they have the intent, and it's over 50% on each leg. There's a point in the testimony before the IJ, where the IJ asks you, can you point to where in your evidence it says that deportees who are detained are beaten or subjected to other kinds of harm, which may have no purpose, other than to intentionally cause severe pain and suffering? And you start to say, well, in his testimony, the IJ says you can't rely on the testimony. What can you point out that says they're doing it for no purpose other than to intentionally cause pain? And the transcript says, I don't see any, Your Honor. Did you have a better answer that you didn't get at that moment? I would say that they knew what the conditions are, and therefore, they're putting them in a position where they know if they don't pay the ransom, extortion, they're going to be in a position where they're not going to have food, not going to have else in the prison is subjected to, is that correct? True, but they're extorting them. The other people are in a different position because presumably, they have criminal acts, they're going to court, or they've been jailed. I thought the record showed 80% of them were pre-trial detainees. Wow. And while ours are being held, they complain about there's no charges, so they are being treated differently. So they basically are being detained to extort without having any charges. It's basically to extort so they can make money, and they know that the conditions at the jail are deplorable. I mean, I could go in detail, but it's pretty obvious that people are dying, getting cholera, people are dying, they have no food, and so I think they meant that this petition meant a burden. Thank you, both sides. We've taken you both over your time. We appreciate your arguments today. Thank you for appearing, and this case is submitted. Thank you, Your Honor. Thank you, Your Honors. I'm not used to having one. Have a nice day. This court for this session stands adjourned.
judges: Boggs, FRIEDLAND, BRESS